Michael K. Brown (SBN 104252)
mkbrown@reedsmith.com
Lisa M. Baird (SBN 179958)
lbaird@reedsmith.com
Mildred Segura (SBN 210850)
msegura@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071
Telephone:213.457.8000
Facsimile: 213.457.8080

Courtland C. Chillingworth  (SBN 261140)
cchillingworth@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA  94105
Telephone:415.543.8700
Facsimile: 415.391.8269

Attorneys for Defendants
Medtronic, Inc. and
Medtronic Sofamor Danek USA, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD EIDSON,<br><br>                      Plaintiff,<br><br>        vs.<br><br>MEDTRONIC, INC.; MEDTRONIC SOFAMOR DANEK USA, INC.,<br><br>                      Defendants. | Case No. 4:13-cv-2049<br><br>Honorable Yvonne Gonzalez Rodgers<br><br>**DEFENDANTS MEDTRONIC, INC. AND MEDTRONIC SOFAMOR DANEK USA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEREOF**<br><br>Compl. Filed:      May 6, 2013<br><br>Date:            August 20, 2013<br>Time:            2:00 p.m.<br>Place:           Oakland Courthouse<br><br>[Concurrently filed with Declaration of Mildred Segura, Request for Judicial Notice and [Proposed] Order] |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................... 1

II. FACTUAL BACKGROUND ................................................................................... 2

   A. Congress "Swept Back" State Control Over Medical Devices And Imposed A Regime Of Detailed FDA Oversight ................................... 2

   B. The FDA Granted Premarket Approval For The Infuse Device In 2002 .................. 3

   C. The FDA Continues To Regulate And Monitor Devices Like The Infuse Device After They Receive Premarket Approval ........................................... 5

   D. Plaintiff's Complaint Alleges That The Infuse Device's FDA-Required Label, Design, And Manufacturing Were Deficient ................................... 5

III. LEGAL ARGUMENT ........................................................................................... 6

   A. The Federal Standard For Motions To Dismiss Under Federal Rules Of Civil Procedure 12(b)(6) and 9(b) .................................................... 6

   B. Riegel Requires The Dismissal Of Plaintiff's Claims ....................................... 7

      1. State-Law Claims That Would Impose Requirements Different From, Or In Addition To, Federal Law Are Expressly Preempted Under 21 U.S.C. § 360k(a) ............................................. 7

      2. All Of Plaintiff's Claims Are Expressly Preempted As A Matter Of Law ............................................................................................. 8

      3. Plaintiff Has Not Alleged A Valid "Parallel" Claim Under California Law .................................................................................. 9

         a. The Requirements For Stating A "Parallel Claim" ......................... 10

         b. Off-Label Promotion Claims Are Not True Parallel Claims ............. 11

   C. Plaintiff's Claims Are Impliedly Preempted And Barred By 21 U.S.C. § 337(a) ............................................................................ 13

   D. Independent Grounds Also Bar Plaintiff's Strict Liability-Design and Fraud-Based Claims ......................................................................... 16

      1. Plaintiff's Strict Liability-Design Defect Claim Is Also Barred By The Restatement (Second) Of Torts Section 402A Comment k .............. 16

      2. Plaintiff's Fraud Claims Are Not Pled With The Requisite Particularity ..................................................................................... 16

IV. CONCLUSION .................................................................................................... 18

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Cases**

*Artiglio v. Superior Court*,
  22 Cal. App. 4th 1388 (1994) ................................................................. 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 6, 7

*Bates v. Dow Agrosciences LLC*,
  544 U.S. 431 (2005) ..................................................................................... 10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................. 6, 7

*Brown v. Superior Court*,
  44 Cal. 3d 1049 (1988) .............................................................................. 16

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ............................................................................ passim

*Cabana v. Stryker Biotech, LLC*,
  No. BC465313, 2012 WL 3876245 (Cal. Super. Aug. 20, 2012) ................... 12

*General Dynamics C4 Systems, Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ............................................................... 7, 17

*Caplinger v. Medtronic, Inc.*,
  ---F. Supp. 2d---, 2013 WL 453133 (W.D. Okla. Feb. 6, 2013) ............. passim

*Carson v. Depuy Spine, Inc.*,
  365 Fed. App'x 812 (9th Cir. 2010, unpub.) ................................................ 8

*Cohen v. Guidant Corp.*,
  No. CV-05-8070, 2011 WL 637472 (C.D. Cal. Feb. 15, 2011) ............. 1, 8, 11

*Coleman v. Medtronic Corp.*,
  No. SC112290, 2012 WL 2335532 (Cal. Super. Ct. June 13, 2012) .............. 12

*Cupek v. Medtronic, Inc.*,
  405 F.3d 421 (6th Cir. 2005) ....................................................................... 7

*Erickson v. Boston Scientific Corp.*,
  846 F. Supp. 2d 1085 (C.D. Cal. 2011) ............................................... passim

*Funk v. Stryker Corp.*,
  631 F.3d 777 (5th Cir. 2011) ................................................................ 10, 11

*Garrett v. Howmedica Osteonics Corp.*,
  214 Cal. App. 4th 173 (2013) ...................................................................... 16

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ................................................................................... 14

*Heisner v. Genzyme Corp.*,
  No. 08-C-593, 2010 WL 894054 (N.D. Ill. Mar. 8, 2010) .......................... 10

*Horowitz v. Stryker Corp.*,
  613 F. Supp. 2d 271 (E.D.N.Y. 2009) ........................................................ 11

*Hufft v. Horowitz*,
  4 Cal. App. 4th 8 (1992) ............................................................................. 16

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*Huggins v. Medtronic, Inc.*,
    No. 12CV40 (Colo. Dist. Ct. Feb. 21, 2013) ............................................................. 12

*Ilarraza v. Medtronic, Inc.*,
    677 F. Supp. 2d 582 (E.D.N.Y. 2009) ....................................................................... 11

*In re Actimmune Mktg. Litig.*,
    614 F. Supp. 2d 1037 (N.D. Cal. 2009) ..................................................................... 13

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
    590 F. Supp.2d 1282 (C.D. Cal. 2008) ...................................................................... 15

*In re Medtronic Sprint Fidelis Leads Prods. Liab. Litig. (Bryant v. Medtronic, Inc.,)*,
    623 F.3d 1200 (8th Cir. 2010) ............................................................................ 1, 9

*Martinez v. Jeffrey Oppenheimer, M.D. et al.*,
    No. 12-31442 CA 06 (Fla. 11th Cir. Ct. Mar. 5, 2013) ................................................ 12

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*,
    No. 07-CV-912, 2007 WL 3047093(S.D. Cal. Oct. 16, 2007) ........................................ 17

*McCormick v. Medtronic, Inc.*,
    Civil No. 368532 (Cir. Ct. Montgomery County, Md. Apr. 23, 2013)............................... 12

*McLaughlin v. National Union Fire Ins. Co.*,
    23 Cal. App. 4th 1132 (1994) ................................................................................. 5

*McMullen v. Medtronic, Inc.*,
    421 F.3d 482 (7th Cir. 2005) ................................................................................ 10

*Medtronic, Inc. v. Lohr,*,
    518 U.S. 480 (1996)........................................................................................... 10

*Parker v. Stryker Corp.*,
    584 F. Supp. 2d 1298 (D. Colo. 2008)....................................................................... 11

*Perez v. Nidek Co., Ltd.*,
    711 F.3d 1109 (9th Cir. 2013) ....................................................................... passim

*PhotoMedex, Inc. v. Irwin*,
    601 F.3d 919 (9th Cir. 2010) ................................................................................ 15

*Plenger v. Alza Corp.*,
    11 Cal. App. 4th 349 (1992) ................................................................................. 16

*Raborn v. Albea*,
    No. 583,675, 2012 WL 6600475 (La. Civ. D. Ct. Nov. 19, 2012) ................................... 12

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008)...................................................................................... passim

*Riley v. Cordis Corp.*,
    625 F. Supp. 2d 769 (D. Minn. 2009)................................................................... 6, 10

*Simmons v. Boston Scientific Corp.*,
    No. CV 12-7962, 2013 WL 1207421 (C.D. Cal. Mar. 25, 2013)................................ 1, 8, 9

*Smith v. Medtronic, Inc.*,
    CA No. 5:13-cv-0451 (W.D. La. May 16, 2013)........................................................ 12

*States v. Caronia*,
    703 F.3d 149 (2d Cir. 2012) ............................................................................. 6, 12

*Stengel v. Medtronic, Inc.*,
    704 F.3d 1224 (9th Cir. 2013) ................................................................. 8, 11, 12, 13

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– iii –

*Telesaurus VPC, LLC v. Power*,
623 F.3d 998(9th Cir. 2010), *cert. denied*, 132 S. Ct. 95 (2011) ................................... 6

*Walker v. Medtronic, Inc.*,
670 F.3d 569(4th Cir. 2012), *cert. denied*, 133 S. Ct. 162 (2012) ........................... 7

*Wolicki-Gables v. Arrow Int'l, Inc.*,
634 F.3d 1296 (11th Cir. 2011) ............................................................. passim

*Wolicki-Gables v. Arrow Int'l, Inc.*,
641 F. Supp. 2d 1270 (M.D. Fla. 2009) ................................................... 15

**Statutes**

21 U.S.C. § 337(a) .......................................................................... 3, 15

21 U.S.C. § 360c(a)(1)(C)(ii) ........................................................... 16

21 U.S.C. § 360c(a)(2)(C) ................................................................. 4

21 U.S.C. § 360e(d) ........................................................................... 4

21 U.S.C. § 360e(d)(6)(A)(i) ............................................................. 5

21 U.S.C. § 360k(a) ...................................................................... 1, 3

21 U.S.C. § 360k(a)(1) ..................................................................... 13

21 U.S.C. § 396 ................................................................................ 6

**Rules**

Fed. R. Civ. Proc. 9(b) ..................................................................... 7

**Regulations**

21 C.F.R. § 814.39(a), (c) ................................................................. 5

**Other Authorities**

S. Rep. No. 33, 94th Cong., 2d Sess. 2 (1975) ................................... 3

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 20, 2013, at 2:00 p.m. or a date to be determined by the Court, the Honorable Yvonne Gonzalez Rodgers presiding, in the Oakland Courthouse of the above-entitled Court, Defendants Medtronic, Inc. and Medtronic Sofamor Danek USA, Inc. (collectively "Medtronic") will move this Court for an order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) in favor of Medtronic, on the ground that Plaintiff Richard Eidson's Complaint fails to state any claims upon which relief can be granted.

Medtronic's motion to dismiss is made on the ground that each of Plaintiff's state law tort claims in the Complaint are barred by the express preemption clause of the Medical Device Amendments (MDA) to the federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 360k(a) as interpreted by the Supreme Court in *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008); and are also impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001), and prohibited by the "no private right of action" provision of the FDCA, 21 U.S.C. § 337(a).  As a result, Plaintiff cannot state a claim against Medtronic and the Complaint should be dismissed with prejudice as to Medtronic.

Three of Plaintiff's causes of action are also barred under independently dispositive defenses. Plaintiff's strict liability—design defect claim (Second Cause of Action) fails because California has adopted the Restatement (Second) of Torts § 402A Comment k, which precludes strict liability design defect claims for implanted prescription medical devices like the Infuse Device. Furthermore, Plaintiff's fraud-based claims (First Cause of Action for "Fraudulent Misrepresentation and Fraud in the Inducement" and Fourth Cause of Action for "Strict Products Liability – Misrepresentation") fail because they are not alleged with the requisite particularity under Federal Rules of Civil Procedure 9(b).

//

//

//

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Medtronic's Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, Declaration of Mildred Segura and the Request for Judicial Notice filed herewith, and the pleadings and papers filed herein.

Dated:  May 28, 2013                      REED SMITH LLP


By ___/s/ Michael K. Brown_____
        Michael K. Brown
        Attorneys for Defendants
        Medtronic, Inc. and Medtronic Sofamor Danek
        USA, Inc.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 2 –

# I.     INTRODUCTION

Plaintiff Richard Eidson's Complaint alleges that he was injured by a Class III medical device—Medtronic's "Infuse Device"—whose design, manufacturing method, and labeling were specifically approved by the Food and Drug Administration (FDA) pursuant to the agency's Premarket Approval (or PMA) process.  Because Plaintiff's claims against Medtronic would require a determination that the Infuse Device should have been designed, manufactured, or labeled differently from the manner required by the FDA, those claims are barred by the express preemption clause of the Medical Device Amendments (MDA) to the federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 360k(a).  As the Supreme Court explained in *Riegel v. Medtronic, Inc*., 552 U.S. 312 (2008), state tort claims are preempted when they would impose any requirement that is "different from, or in addition to" those imposed through the Premarket Approval process.  552 U.S. at 327-28 (citing 21 U.S.C. § 360k(a)).

Numerous courts following *Riegel* have dismissed similar cases involving Premarket-Approved medical devices, including courts within the Ninth Circuit.  *See, e.g., Perez v. Nidek Co., Ltd*., 711 F.3d 1109, 1118-19 (9th Cir. 2013) (affirming preemption-based dismissal of fraud by omission claim); *Erickson v. Boston Scientific Corp.,* 846 F. Supp. 2d 1085, 1093-94 (C.D. Cal. 2011) (granting preemption-based motion for judgment on the pleadings); *Simmons v. Boston Scientific Corp*., No. CV 12-7962, 2013 WL 1207421, *4-*6 (C.D. Cal. Mar. 25, 2013) (same); *Cohen v. Guidant Corp.,* No. CV-05-8070, 2011 WL 637472 at *1 (C.D. Cal. Feb. 15, 2011) (same).  Because all of Plaintiff's claims seek to impose state-law requirements on the design, manufacture, or labeling of the Infuse Device that are different from or in addition to those imposed by the FDA through the Premarket Approval process, § 360k(a) and *Riegel* compel dismissal.

Plaintiff's claims seek to enforce federal law and thus are also impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001), and prohibited by the "no private right of action" provision of the FDCA, 21 U.S.C. § 337(a).  The application of *Riegel* and *Buckman* create a "narrow gap" through which state law claims may survive; here, Plaintiff's claims simply do not fit.  *See Perez*, 711 F.3d at 1119 (*citing In re Medtronic Sprint Fidelis Leads Prods. Liab. Litig. (Bryant v. Medtronic, Inc.*), 623 F.3d 1200, 1204 (8th Cir. 2010) ("*Bryant*")).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    Plaintiff's allegations of "off-label" use and promotion do not change this analysis.  The only

2    federal district court to rule on a preemption motion involving the Infuse Device ruled, in a very

3    detailed opinion, that all of the Plaintiff's claims were both expressly and impliedly preempted.

4    *Caplinger v. Medtronic*, Inc., ---F. Supp. 2d---, 2013 WL 453133, *10 (W.D. Okla. Feb. 6, 2013),

5    *reconsideration denied*, 2013 WL 1411347 (W.D. Okla. Apr. 8, 2013) ("[P]laintiff's off-label

6    promotion allegations do not somehow turn plaintiff's claims into 'parallel' claims that are not

7    preempted.")

8    Finally, independent grounds also require dismissal of a number of Plaintiff's claims.

9    Plaintiff's strict liability—design defect claim must be dismissed because California has adopted the

10   Restatement (Second) of Torts § 402A Comment k, which precludes strict liability design defect

11   claims for implanted prescription medical devices like the Infuse Device.  Also, Plaintiff's fraud

12   claims must be dismissed because they are not alleged with the requisite particularity under Federal

13   Rules of Civil Procedure 9(b).

14   For all these reasons, Medtronic's motion to dismiss should be granted.

## II.    FACTUAL BACKGROUND

16   For purposes of this motion, the relevant factual allegations are straightforward:

17   (1)    **The medical device at issue is the Infuse Device.**  *(See, e.g., Complaint ¶ 1)*; and

18   (2)    **The Infuse Device is a Class III medical device approved by the FDA through
         the rigorous Premarket Approval process.**  *(See, e.g., Complaint ¶ 55 (noting that*
19       *the Infuse Device received Premarket Approval on July 2, 2002); see also*
         *Medtronic's Request for Judicial Notice ("RJN"), Exhibit A, the Infuse Device*
20       *Premarket Approval Database Listing, p. 1)*

21   Although these two background facts are all that is required to grant Medtronic's motion to

22   dismiss under the Supreme Court's controlling authority, a more detailed regulatory history follows

23   to provide this Court with additional context for the preemption issues at hand.

## A.    Congress "Swept Back" State Control Over Medical Devices And Imposed A Regime Of Detailed FDA Oversight

25   When Congress granted the FDA regulatory power over medical devices in 1976, it sought to

26   "provide for the safety and effectiveness of medical devices" (90 Stat. 539), while simultaneously

27   "encourag[ing] the[ ] research and development" of "sophisticated, critically important" devices.  S.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   Rep. No. 33, 94th Cong., 2d Sess. 2 (1975).  To achieve that regulatory balance, the MDA "swept

2   back" state control over medical devices and "imposed a regime of detailed federal oversight" by the

3   FDA.  *Riegel*, 552 U.S. at 316.  The MDA thus expressly preempts state-law requirements applicable

4   to medical devices that are "different from, or in addition to" requirements established by the FDA

5   [21 U.S.C. § 360k(a)], whether the state requirement is imposed via tort law or regulation.  "State

6   tort law that requires a manufacturer's catheters to be safer, but hence less effective, than the model

7   the FDA has approved disrupts the federal scheme. . . . A jury . . . sees only the cost of a more

8   dangerous design, and is not concerned with its benefits; the patients who reaped those benefits are

9   not represented in court."  *Riegel,* 552 U.S. at 324.

10        Similarly, § 337(a)—which was enacted as part of the FDCA in 1938 and extended by the

11   MDA to medical devices—establishes that there is no private right of action to enforce the MDA,

12   and that, apart from certain suits initiated by the states, "all such proceedings for the enforcement, or

13   to restrain violations, of this chapter shall be by and in the name of the United States."  21 U.S.C. §

14   337(a).

15   **B.     The FDA Granted Premarket Approval For The Infuse Device In 2002**

16        Plaintiff's Complaint alleges that Mr. Eidson's surgeon implanted the Infuse Device on

17   November 11, 2008 through spinal surgery in an off-label manner.  *(See Complaint ¶ 278)* As

18   initially approved by the FDA, the "Infuse Device" consists of two components with three parts: (1)

19   a recombinant human bone morphogenetic protein-2 ("rhBMP-2"), (2) a collagen scaffold (that is, a

20   sponge), and (3) a tapered metallic spinal fusion cage.  *(See RJN, Exhibit B, Premarket Approval*

21   *Letter for the Infuse Device)*[1]

22        The Infuse Device is a Class III medical device subject to the FDA's rigorous Premarket

23   Approval process, which applies to devices like the Infuse Device that are both truly innovative and

24   present a potential for unreasonable risk of illness or injury, or are important to supporting or

25
26   _____
     1       While the FDA's initial Premarket Approval specified the LT-Cage as the tapered metallic
     spinal fusion cage component, later-approved PMA Supplements authorized additional, alternative
     cages, the "InterFix" and the "InterFix RP."  *(See RJN, Exhibit D, the FDA's Premarket Approval*
27   *Database Listing for PMA Supplement 004 for the Infuse Device)*  The FDA also has approved PMA
     Supplements for the Infuse Device in configurations without any cage.  *(Complaint, n.1; RJN,*
28   *Exhibits E & F, Premarket Approval Letters for tibial and dental indications)*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   sustaining human life, or preserving human health.  *See Riegel*, 552 U.S. at 317; *Buckman*, 531 U.S.

2   at 344.  The FDA "grants premarket approval only if it finds there is a 'reasonable assurance' of the

3   device's 'safety and effectiveness.'" *Riegel*, 552 U.S. at 318 (quoting 21 U.S.C. § 360e(d)).

4   Premarket Approval "*is* federal safety review."  *Id.* at 323 (emphasis in original).  The FDA thus

5   closely scrutinizes applications for Premarket Approval, "'weigh[ing] any probable benefit to health

6   from the use of the device against any probable risk of injury or illness from such use.'"  *Riegel*, 552

7   U.S. at 318 (quoting 21 U.S.C. § 360c(a)(2)(C)).

8          On July 2, 2002, after nearly a year-and-a-half of review, the FDA granted Premarket

9   Approval for the Infuse Device under PMA Number P000058.  *(RJN, Exhibit A, p. 1, Exhibit B, p. 1)*

10  Additionally, since the Infuse Device first received Premarket Approval, the FDA has approved

11  forty-four supplements to its Premarket Approval.  *(RJN, Exhibit A, p. 2).*  The latest of these

12  supplements was approved by the FDA on March 27, 2013.  *(RJN, Exhibit C, the FDA's Premarket*

13  *Approval Database Listing for PMA Supplement 053 for Infuse)*

14         Through this PMA process, the FDA required particular language on the Infuse Device

15  label—language that informed surgeons that all approved components were to be used together, that

16  safety and effectiveness for unapproved surgical techniques was not established, and that the Infuse

17  Device unavoidably carried certain risks:

18       • "The InFUSE™ Bone Graft component is inserted into the LT-CAGE™
19         Lumbar Tapered Fusion Device component to form the complete InFUSE™
           Bone Graft/LT-CAGE™ Lumbar Tapered Fusion Device.  **These
20         components <u>must</u> be used as a system.  The InFUSE™ Bone Graft
           component <u>must not</u> be used without the LT-CAGE™ Lumbar Tapered
21         Fusion Device component**."  *(RJN Ex. G, at 1 (emphasis original))*

22       • "The LT-CAGE™ Lumbar Tapered Fusion Device component is sold
23         separately from the InFUSE™ Bone Graft component, however, these two
           components <u>must</u> be used together.  *(Id. (emphasis original))*

24
25       • "The safety and effectiveness of the InFUSE Bone Graft component with
           other surgical implants, implanted at locations other than the lower lumbar
26         spine, or used in surgical techniques other than anterior open or anterior
           laparoscopic approaches have not been established."  *(Id. at 4)*

27

28

– 4 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  **C.   The FDA Continues To Regulate And Monitor Devices Like The Infuse Device After**
2  **They Receive Premarket Approval**

3  After the FDA grants Premarket Approval to a device, its regulatory oversight does not end.

4  For example, "[o]nce a device has received premarket approval, [federal law] forbids the

5  manufacturer to make, without FDA permission, changes in design specifications, manufacturing

6  processes, labeling, or any other attribute, that would affect safety or effectiveness."  *Riegel*, 552

7  U.S. at 319 (*citing* 21 U.S.C. § 360e(d)(6)(A)(i)).  To make such changes, a manufacturer must

8  submit a Premarket Approval Supplement, which is subject to the same rigorous standards of review

9  as the initial application, and can implement the proposed changes only after FDA approval.  *See id*.

10 (*citing* 21 C.F.R. § 814.39(a), (c)).  The FDA has never revoked, withdrawn, or otherwise suspended

11 the Premarket Approval for the Infuse Device and the FDA's approval is in place to this day.  *(RJN,*

12 *Exhibit A, reflecting the current Premarket Approval database listing for the Infuse Device)*

13 **D.   Plaintiff's Complaint Alleges That The Infuse Device's FDA-Required Label, Design,**
   **And Manufacturing Were Deficient**

14 Plaintiff's Complaint pleads five[2] causes of action against Medtronic in connection with its

15 Infuse Device: fraudulent misrepresentation and fraud in the inducement *(Complaint ¶¶ 283-295)*,

16 strict products liability–failure to warn *(id. ¶¶ 296-309)*, strict products liability–design defect *(Id.*

17 *¶¶ 310-319)*, strict products liability–misrepresentation *(Id. ¶¶ 320-328)*, and products liability–

18 negligence *(id. ¶¶ 329-339).*  Although variously styled, the gravamen of each claim is that

19 Medtronic should have labeled, designed, or manufactured the Infuse Device in a manner different

20 than required by federal law, or that Medtronic should have done something additional that federal

21 law did not require.

22 The Complaint also contains various allegations that the use of the Infuse Device in

23 Plaintiff's surgery was "off-label," and that Medtronic promoted the Infuse Device for this off-label

24

25

26 2      Plaintiff's Complaint lists "Punitive Damages" as a Sixth Cause of Action on the caption
   page, but it is not included as a cause of action in the body of the Complaint.  *(See Complaint,*
27 *caption page and at p. 71, ¶¶ 340-49)*  In California, punitive damages are merely a remedy
   (*McLaughlin v. National Union Fire Ins. Co.*, 23 Cal. App. 4th 1132, 1164 (1994)) and Plaintiff here
28 has not sufficiently averred allegations to support it.  These allegations also fail because all of the
   possible predicate claims are subject to dismissal.

– 5 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   use without adequately disclosing its alleged risks.[3]  *See, e.g., Complaint ¶¶ 1, 285-286.*  But

2   Medtronic did warn against implanting the device without the LT-Cage component or via a

3   posterior, rather than anterior, surgical approach, as the original Infuse Device label specifically

4   warned that the Infuse device "must not be used without the LT-Cage" and that the "[t]he safety and

5   effectiveness of the InFUSE Bone Graft component … used in surgical techniques other than

6   anterior … approaches have not been established." *(See RJN Ex. G, at 1, 4; Ex. H, at 2, 5)*

7        As explained below, however, these allegations of off-label use and promotion also do not

8   save Plaintiff's claims from preemption because (1) they still would require that Medtronic add to or

9   change the FDA-mandated warning label of the Infuse Device when it is prohibited from doing so by

10  federal law; and (2) the claims are an attempt to enforce federal law and pursue a private right of

11  action barred by *Buckman* and § 337(a).

## III.    LEGAL ARGUMENT

### A.    The Federal Standard For Motions To Dismiss Under Federal Rules Of Civil Procedure 12(b)(6) and 9(b)

15      Dismissal under Federal Rules of Civil Procedure 12(b)(6) is appropriate where the

16  complaint fails to state a claim for relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

    662, 679 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Telesaurus*

---

18  3    "Off-label" use of a medical device—*i.e.*, "use of a device for some other purpose than that
19  for which it has been approved by the FDA"—is an "accepted and necessary corollary" of the fact
    that the FDA does not regulate the practice of medicine. *Buckman*, 531 U.S. at 350. "[T]he FDA's
20  drug approval process generally contemplates that approved drugs"—and devices—"will be used in
    off-label ways." *States v. Caronia*, 703 F.3d 149, 166 (2d Cir. 2012). This is because physicians are
21  free to prescribe prescription devices for whatever purpose they judge their patients to need—
    regardless of whether the FDA has approved that indicated use for inclusion on the label. *See*
22  *Buckman*, 531 U.S. at 341, 350. Indeed, the FDCA provides that it does not "limit or interfere with
    the authority of a health care practitioner to prescribe or administer any legally marketed device to a
23  patient for any condition or disease within a legitimate health care practitioner-patient relationship."
    *Id*. at 350 (quoting 21 U.S.C. § 396); *see also Perez*, 711 F.3d at 1115 (quoting *Buckman*).
24      Furthermore, as the Second Circuit has recognized, the FDCA "and its accompanying
    regulations do not expressly prohibit . . . off-label promotion." *Caronia*, 703 F.3d at 160. The FDA
25  "recognizes that the public health can be served when health care professionals receive truthful and
    non-misleading scientific and medical information on unapproved uses of approved or cleared
26  medical products." *See Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 782 n.2 (D. Minn. 2009). By
    contrast, any attempt to prohibit truthful off-label promotion "while simultaneously allowing off-
27  label use 'paternalistically' interferes with the ability of physicians and patients to receive potentially
    relevant treatment information; such barriers to information about off-label use could inhibit, to the
28  public's detriment, informed and intelligent treatment decisions." *Caronia*, 703 F.3d. at 166.

---

1   *VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010), *cert. denied*, 132 S. Ct. 95 (2011).  "A

2   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

3   reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

4   It is "plaintiff's obligation to provide . . . more than labels and conclusions, and a formulaic

5   recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555, and

6   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

7   do not suffice."  *Iqbal*, 556 U.S. at 678.  Moreover, federal courts are "not bound to accept as true a

8   legal conclusion couched as a factual allegation."  *Id.*; *see also Erickson*, 846 F. Supp. 2d at 1089-

9   90.  Allegations of fraud are subject to Rule 9(b) heightened pleading, which requires that "the

10  circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. Proc.

11  9(b).  Allegations of fraud also must be facially plausible.  *Cafasso v. General Dynamics C4*

12  *Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (confirming that *Iqbal's* plausibility requirement

13  applies to claims subject to Rule 9(b) and stating that "claims of fraud or mistake… must, in addition

14  to pleading with particularity, also plead plausible allegations.")  Plaintiff's vague and conclusory

15  allegations do not pass muster under these federal pleading standards.

16  **B.**   ***Riegel* Requires The Dismissal Of Plaintiff's Claims**

17          **1.    State-Law Claims That Would Impose Requirements Different From, Or In
               Addition To, Federal Law Are Expressly Preempted Under 21 U.S.C. § 360k(a)**
18

19          The Supreme Court in *Riegel* established a straightforward two-step procedure for

    determining if state law claims are expressly preempted under Section 360k(a).
20
            ***First***, the court must determine whether "the Federal Government has established
21
    requirements applicable to" the particular medical device.  *Riegel*, 552 U.S. at 321.  Claims
22
    involving a device, such as the Infuse Device, that has received Premarket Approval automatically
23
    satisfy this first condition.  *Id.* at 322 ("[p]remarket approval . . . imposes [federal] 'requirements'"
24
    as that term is used in § 360k(a)); *Walker v. Medtronic, Inc.*, 670 F.3d 569, 573-74 (4th Cir. 2012),
25
    *cert. denied*, 133 S. Ct. 162 (2012); *Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1300-01
26
    (11th Cir. 2011); *Cupek v. Medtronic, Inc.*, 405 F.3d 421, 424 (6th Cir. 2005).
27

28

1    ***Second***, the court then must determine whether the plaintiff's state law causes of action

2    would impose requirements "different from, or in addition to" those established by the FDA.  *Riegel*,

3    552 U.S. at 321; *see also id.* at 316 (citing § 360k(a) and noting requirements must relate to either

4    "'safety and effectiveness'" or "any other matter included in a requirement applicable to the device

5    under" the Medical Device Amendments to the FDCA); *Stengel v. Medtronic, Inc.*, 704 F.3d

6    1224,1233 (9th Cir. 2013) (en banc); *Wolicki-Gables,* 634 F.3d at 1300-01; *Erickson,* 846 F. Supp.

7    2d at 1091; *Simmons*, 2013 WL 1207421, *3; *Cohen,* 2011 WL 637472 at *1.   Claims

8    encompassing state common law tort theories, such as strict liability and negligence, automatically

9    impose state law requirements within the meaning of § 360k(a), and are preempted if they impose

10   duties that differ from, or add to, the duties mandated by federal law.  *Riegel*, 552 U.S. at 324-25

11   (holding that duties imposed through state common law tort claims constitute state "requirements");

12   *see also id.* at 330 (strict liability and negligence claims preempted).

13          Subsequent case law has confirmed the broad scope of the MDA's express preemption

14   provision.  Courts in this circuit have applied *Riegel* to reject state-law claims seeking to impose

15   different or additional requirements on Premarket-Approved medical devices.  *See e.g., Perez*, 711

16   F. 3d at 1118 (affirming dismissal of fraud by omission claim on express preemption grounds

17   because Plaintiff's claim "effectively seeks to write in a new provision to the FDCA"); *Erickson*,

18   846 F. Supp. 2d at 1093-94 (granting preemption-based motion for judgment on the pleadings

19   without leave to amend); *Cohen*, 2011 WL 637472 at *1 (granting preemption-based motion to

20   dismiss without leave to amend); *Carson v. Depuy Spine, Inc*., 365 Fed. App'x 812, 813-15 (9th Cir.

21   2010, unpub.) (affirming order granting preemption-based summary judgment); *see also Stengel*,

22   704 F.3d at 1233 (certain claims preempted where the plaintiffs "have not specified in those claims a

23   state-law duty that parallels a federal-law duty under the MDA" while other Arizona law claims

24   satisfying that requirement not preempted); *accord Simmons*, 2013 WL 1207421, *4-*6 (post-

25   *Stengel* decision dismissing all state law claims with prejudice based on express preemption).

26       **2.      All Of Plaintiff's Claims Are Expressly Preempted As A Matter Of Law**

27          The FDA's Premarket Approval of the Infuse Device imposes federal "requirements" that

28   strictly control its design, manufacture, and labeling.  Each of Plaintiff's claims depends on a finding

that the Infuse Device should have been designed, manufactured, or labeled differently from the manner approved by the FDA and, accordingly, is expressly preempted under § 360k(a).  *See Riegel*, 552 U.S. at 320 (affirming dismissal on ground that the "MDA pre-empt[s] . . . claims of strict liability; breach of implied warranty; and negligence in the design, testing, inspection, distribution, labeling, marketing, and sale" of a Premarket-Approved device); *see also Caplinger*, 2013 WL 453133, at *13 (claims related to the Infuse Device are "the exact type of claim that is expressly preempted under § 360k(a)").  In particular:

- ***Strict Products Liability – Failure To Warn*** (*Complaint ¶¶ 296-309*):  Plaintiff alleges that Medtronic should have given different or additional warnings, beyond those required by the FDA, and such a claim is plainly preempted. *See, e.g.*, *Simmons,* 2013 WL 1207421, *5 (dismissing strict liability failure to warn claim with prejudice based on express preemption); *Caplinger*, 2013 WL 453133, *12-*14 (Infuse Device case; same).

- ***Strict Products Liability – Design Defect*** (*Complaint ¶¶ 310-319*): Riegel squarely holds that "common-law causes of action for…strict liability do impose 'requirement[s]' and [are] pre-empted by federal requirements specific to a [PMA-approved] medical device." 552 U.S. at 332; *see also Bryant*, 623 F.3d at 1206 (affirming dismissal of design defect claim); *Erickson*, 846 F. Supp. 2d at 1093-94 (dismissing strict liability design defect claim); *Caplinger*, 2013 WL 453133, *13 (Infuse Device case; same).

- ***Products Liability – Negligence*** (*Complaint ¶¶ 329-339*): Plaintiff's negligence claim is preempted because it would require a finding that, as a matter of state negligence law, the FDA-approved manufacturing, design, and label of the Infuse Device was defective.  *See e.g.*, *Erickson*, 846 F. Supp. 2d at 1093-94 (dismissing negligence claim); *Caplinger*, 2013 WL 453133, *14-*15 (Infuse Device case; same).

- ***Fraudulent Misrepresentation And Fraud In The Inducement*** (*Complaint ¶¶ 283-295*) ***and Strict Products Liability – Misrepresentation*** (*Id. ¶¶ 320-328*):  Plaintiff's fraud-based claims are premised on the assertion that the device should have been labeled differently, or that Medtronic should have provided additional warnings.  Such claims are preempted. *See, e.g.*, *Erickson*, 846 F. Supp. 2d at 1094 (dismissing fraud claims); *see also Caplinger*, 2013 WL 453133, *10-*16 (Infuse Device case; same).

In short, Plaintiff has failed to plead any claims that are not preempted, and his claims should be dismissed without leave to amend as a result.

### 3.    Plaintiff Has Not Alleged A Valid "Parallel" Claim Under California Law

Plaintiff's Complaint rests on allegations that Medtronic violated federal law by engaging in off-label promotion.  *(See Complaint ¶¶ 129-131)*  Presumably he does so in an effort to suggest that his claims rest on state law duties that merely "'parallel,' rather than differ from or add to, federal

– 9 –

requirements" and therefore escape preemption under Section 360k(a).  *Riegel*, 552 U.S. at 330.  As shown below, Plaintiff has not alleged a valid "parallel" claim.

### a.    The Requirements For Stating A "Parallel Claim"

Because *Riegel* held that medical device preemption results only when a state law claim imposes requirements that are "different from, or in addition to" federal Premarket Approval requirements, courts have acknowledged that a very narrow exception may exist when the plaintiff asserts a state law claim that imposes duties that "parallel" the federal requirements imposed through the Premarket Approval process.

The Supreme Court has explained that a state law cause of action would not be expressly preempted under 21 U.S.C. § 360k(a) if it imposed duties that are "***identical***" to those imposed by federal law applicable to the medical device in question.  *Medtronic, Inc. v. Lohr*, 518 U.S. 480, 495 (1996).  Echoing *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), the Eleventh Circuit has explained (in an off-label promotion case) that:

> In order for a state requirement to be parallel to a federal requirement, and thus not expressly preempted under § 360k(a), the plaintiff must show that the requirements are "***genuinely*** equivalent."  State and federal requirements are not genuinely equivalent if a manufacturer could be held liable under the state law without having violated the federal law.

*Wolicki-Gables,* 634 F.3d at 1300 (quoting *McMullen v. Medtronic, Inc.,* 421 F.3d 482, 489 (7th Cir. 2005); in turn quoting *Bates,* 544 U.S. at 454 (emphasis in original)).

Thus, as courts around the country have explained, to state a true parallel claim, the complaint must allege a specific and pre-existing state-law tort theory that makes the predicate federal regulatory violation actionable while imposing no different or additional duties on the manufacturer.  *See Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011); *McMullen*, 421 F.3d at 488-89; *Riley*, 625 F. Supp. 2d at 777 ("the conduct on which the claim is premised must be the type of conduct that would traditionally give rise to liability under state law—and that would give rise to liability under state law even if the FDCA had never been enacted"); *Heisner v. Genzyme Corp.*, No. 08-C-593, 2010 WL 894054, at *4 (N.D. Ill. Mar. 8, 2010) ("failure to report adverse events to the

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 10 –

FDA" theory may describe an FDCA violation, but it does not constitute a viable product liability theory under state law).

Many courts also require that the complaint show that the plaintiff's alleged injuries are causally linked to the alleged deviation from a federal requirement that the plaintiff seeks to remedy through the parallel state-law claim. *See Wolicki-Gables*, 634 F.3d at 1301-02 (no parallel claim because plaintiff did not "'set forth any specific problem, or failure to comply with any FDA regulation that can be linked to the injury alleged.") (quoting *Ilarraza v. Medtronic, Inc.*, 677 F. Supp. 2d 582, 589 (E.D.N.Y. 2009)); *Funk*, 631 F.3d at 782; *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 282-83 (E.D.N.Y. 2009); *Parker v. Stryker Corp.*, 584 F. Supp. 2d 1298, 1301 (D. Colo. 2008) (preemption barred plaintiff's claims where plaintiff failed to demonstrate causal connection between alleged defect and plaintiff's injury or that defendant's alleged violation of federal regulations rendered device defective); *Cohen*, 2011 WL 637472, *1 ("[i]n order for Plaintiff to plead properly parallel claims that survive preemption under *Riegel*, he must demonstrate facts . . . establishing a causal nexus between the alleged injury and the violation."); *but see Stengel*, 704 F.3d at 1235 (Watford, J., concurring) (stating that causation was a requirement for the proof, rather than the pleading stage).

### b.    Off-Label Promotion Claims Are Not True Parallel Claims

Off-label promotion claims involving the Infuse Device do not meet this parallel claim test, and the *Caplinger* decision by the Chief Judge of the Western District of Oklahoma provides a clear roadmap for the analysis.  *See Caplinger,* 2013 WL 453133, at *10-*16 (plaintiff failed to allege a parallel claim in an Infuse Device case alleging off-label promotion).  As to fraud and failure-to-warn claims asserting that the manufacturer failed to disclose risks of off-label uses, allowing these claims "would permit a finding that defendants were required to alter the Infuse Device's warning and label and to provide additional warnings above and beyond those on the Infuse Device's label and accompanying the device—a label and warnings that were specifically approved by the FDA as part of the PMA process."  *Id.* at *10, *13, *15-*16.  Claims that the "Infuse Device was defective and unreasonably dangerous," or had a design defect when used off-label, or was "not safe and effective" similarly contradict the Premarket Approval and would impose different or additional

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Case5:13-cv-02049-LHK   Document9   Filed05/28/13   Page19 of 25

requirements. *Id.* at *12, *13-*14. Moreover, *Caplinger* also specifically concluded "that [a] federal requirement that manufacturers not promote devices for off-label uses is not genuinely equivalent to the state law requirement that a manufacturer provide adequate warnings to physicians about the risks of its medical device . . . [i]t is possible to violate the state law while comply with the federal requirement and vice versa." *Id.* at *10 n.4. Not surprisingly, *Caplinger*'s analysis has been adopted in a subsequent Infuse Device case as well. *See McCormick v. Medtronic, Inc.*, Civil No. 368532 (Cir. Ct. Montgomery County, Md. Apr. 23, 2013) (characterizing the *Caplinger*'s analysis as "flawless" and granting preemption-based motion to dismiss in an Infuse Device case where plaintiffs alleged off-label promotion) *(Declaration of Mildred Segura, Exhibit 1, Order and Hearing Transcript at p. 76)*.[4]

Medtronic nevertheless anticipates that Plaintiff may argue that *Stengel* supports the denial of Medtronic's Motion to Dismiss. It does not. *Stengel* concluded that a failure to warn claim under Arizona law imposed duties that were parallel to federal adverse event reporting regulations, neither of which are at issue in this case. *See Stengel*, 704 F.3d at 1232-33. As to the allegedly parallel federal violation that is at issue here, no express federal statute or regulation prohibits off-label promotion. The FDCA "and its accompanying regulations do not expressly prohibit . . . off-label promotion." *Caronia*, 703 F.3d at 160. And on the state-law side of the parallel claim equation, Plaintiff has not pointed to any state law authority imposing liability for off-label

---

4      *See Raborn v. Albea,* No. 583,675, 2012 WL 6600475, *1 (La. Civ. D. Ct. Nov. 19, 2012) (dismissing as expressly preempted Infuse-related claims similar to those asserted here because they would "impose state-law requirements on a medical device that are different from, or in addition to, those required by the [FDA]"); *Coleman v. Medtronic Corp.*, No. SC112290, 2012 WL 2335532 (Cal. Super. Ct. June 13, 2012) (dismissing with prejudice Infuse-related claims such as those asserted here because "Plaintiff would require Defendant to give warnings different from, or in addition to, those required by the FDA"); *see also Smith v. Medtronic, Inc.* CA No. 5:13-cv-0451 (W.D. La. May 16, 2013) (granting Motion to Dismiss in Infuse-related case, but allowing Plaintiff opportunity to amend complaint "to clarify her remaining causes of action for the promotion and marketing of off label use of a device"). In contrast, where state court cases involving the Infuse Device have been allowed to proceed, the analysis has been far less rigorous than that by the *Caplinger* court. *Cabana v. Stryker Biotech, LLC*, No. BC465313, 2012 WL 3876245 (Cal. Super. Aug. 20, 2012) (finding some triable issues but noteworthy in that it also resulted in the voluntary dismissal of many of plaintiff's claims, including all claims for strict product liability: design defect, manufacturing defect and failure to warn, as well as the plaintiff's breach of implied warranty claim); *Huggins v. Medtronic, Inc.*, No. 12CV40 (Colo. Dist. Ct. Feb. 21, 2013) (denying preemption-based Motion to Dismiss but providing no analysis); *Martinez v. Jeffrey Oppenheimer, M.D. et al.*, No. 12-31442 CA 06 (Fla. 11th Cir. Ct. Mar. 5, 2013) (denying preemption-based Motion to Dismiss but providing no analysis).

– 12 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

promotion, and—to the extent Plaintiff might point to a misrepresentation or failure to warn claim—off-label promotion is not inherently misleading *simply* because the use is off-label particularly where, as here, the label was approved by the FDA through the Premarket Approval process.  *See In re Actimmune Mktg. Litig.,* 614 F. Supp. 2d 1037, 1051, n.6 (N.D. Cal. 2009).  In circumstances like here, *Stengel* confirms that under *Riegel*, state tort claims are expressly preempted "to the extent that they are 'different from, or in addition to' the requirements imposed by federal law."  *Stengel*, 704 F.3d at 1230 (quoting *Riegel*, 552 U.S. at 330).

Moreover, following *Stengel*, the Ninth Circuit itself addressed how off-label claims should be evaluated in the express preemption context.  In *Perez*, the plaintiffs alleged that the defendant had promoted the device at issue for off-label uses, and pointed to an FDA "warning letter" faulting the defendant's employees for modifying the device (in violation of PMA) so that it could be used off-label.  *Perez*, 711 F.3d at 1113.  The plaintiffs asserted a claim for fraud by omission, alleging that the defendants had misled them by failing to disclose that the device was not FDA approved for the off-label use.  *Id.* at 1117.  Yet the Ninth Circuit affirmed dismissal of the fraud by omission claim on the grounds of express preemption because the plaintiffs' claim would add a disclosure requirement "'different from, or in addition to' the requirements applicable to the [device] under the MDA."  *Id.* at 1118 (quoting 21 U.S.C. § 360k(a)(1)).  Plaintiff's off-label promotion allegations—allegations not at issue in *Stengel*, but present in *Perez*—fall short of what is required to state a valid parallel claim.

**C.      Plaintiff's Claims Are Impliedly Preempted And Barred By 21 U.S.C. § 337(a)**

Even if allegations of off-label promotion or some alleged violation of federal requirements could save Plaintiff's claims from express preemption, his claims would still be impliedly preempted under *Buckman* and barred by 21 U.S.C. § 337(a).  *See Caplinger*, 2013 WL 543133, *15 ("to the extent that plaintiff's negligence claim is based upon defendants' promotion and marketing of the Infuse Device for off-label uses, the Court finds it is impliedly preempted under *Buckman* and § 337(a).").

– 13 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    In *Buckman*, the Supreme Court concluded that "fraud-on-the-FDA" claims were impliedly

2    preempted by the MDA because they improperly infringed upon the FDA's regulatory authority.

3    *Buckman*, 531 U.S. at 347-48.  In reaching that conclusion, the Supreme Court noted its profound

4    concern that permitting state tort claims to proceed when they were based upon a duty that existed

5    solely by virtue of the federal statutory scheme would upset the regulatory balancing and were, thus,

6    impliedly preempted.  *Id*. at 350-51.  The Court advanced a number of reasons why that was so,

7    including: the risk of infringing on the FDA's broad discretion to police violations of its regulations

8    as it sees fit.  *Id.; see also Heckler v. Chaney,* 470 U.S. 821, 835 (1985) (emphasizing the

9    importance of the FDA's "complete discretion" in deciding "how and when [its enforcement tools]

10   should be exercised.").  The fact that the obligation to submit the requisite information to the FDA

11   was solely a product of the federal regulatory scheme was another.  *Buckman*, 531 U.S. at 350-51.

12   The Court foresaw that state tort claims would exercise an "extraneous pull" on the regulatory

13   scheme and concluded that resulting interference with the federal regulatory scheme meant that such

14   claims were impliedly preempted.  *Id*. at 353.

15   In *Perez*, the Ninth Circuit held that the fraud claim based on alleged off-label promotion

16   allegations was also impliedly preempted.  In so holding, the court determined that an off-label

17   based "fraud by omission claim 'exist[s] solely by virtue of the FDCA…requirements,' with respect

18   to approved use of the [medical device]."  *Perez*, 711 F.3d at 1119 (citation omitted).  The Court

19   reasoned that off-label use is a concept entirely derived from the FDCA, and "[l]ike the fraud-on-

20   the-FDA claims in *Buckman*, [plaintiffs'] fraud by omission claim 'exist[s] solely by virtue of the

21   FDCA . . . requirements' . . . [and] 'the existence of these federal enactments is a critical element in

22   their case.'"  *Id*. (quoting *Buckman*, 531 U.S. at 353).  Thus, by seeking to impose liability for any

23   potential alleged violation of purported federal regulations relating to off-label promotion [*e.g.,*

24   *Complaint, ¶¶ 141-150, 331(c)*], Plaintiff is either (1) trying to usurp the FDA's regulatory

25   oversight role for policing purported violations of the agency's regulations; or (2) basing his  various

26   tort claims solely on a violation of federal law.  Either way, Plaintiff's claims run headlong into

27   *Buckman*'s implied preemption principles.

28

– 14 –

In addition to the obstacles created by *Buckman*, to the extent Plaintiff seeks to base his tort claims on an alleged violation of the FDCA or implementing regulation, those claims are barred by 21 U.S.C. § 337(a). *Stengel* did not examine this "no private right of action" requirement, yet the Supreme Court has held that it "leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance" with federal law. *Buckman*, 531 U.S. at 349 n.4 (citing 21 U.S.C. § 337(a)).  Courts thus reject plaintiffs' efforts to enforce federal requirements regarding off-label promotion under § 337(a), because any effort by a plaintiff to fashion a state-law cause of action out of any alleged federal statutory violation with no counterpart in established state law is an attempt at private enforcement of the FDCA barred by § 337(a). *See, e.g.*, *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010) (citing *Buckman* and section 337(a), and noting that claims under state law theories are preempted where such "claims collide with the exclusive enforcement power of the federal government"); *Wolicki-Gables v. Arrow Int'l, Inc.,* 641 F. Supp. 2d 1270, 1292 (M.D. Fla. 2009) (recognizing that, even if the plaintiff had evidence of off-label promotion or marketing "there is no private right of action for violations of the FDCA"), *aff'd* 634 F.3d 1296 (11th Cir. 2011); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp.2d 1282, 1292 (C.D. Cal. 2008) ("insofar as Plaintiffs' claims are based solely on allegations that Defendants promoted [the prescription drug] for off-label purposes, they constitute an impermissible attempt to bring a private suit for violations of the FDCA").

In short, there is no pre-existing state-law duty to abstain from off-label promotion; these duties and concepts are alien to state law and the distinction between on-label and off-label uses is a creature of federal law that exists only within, and by virtue of, the federal regulatory scheme. *See Buckman*, 531 U.S. at 350.  Thus, Plaintiff is seeking to hold Medtronic liable for conduct that was not unlawful under "traditional state tort law which had predated the federal enactment," and attempting to pursue claims that include as a "critical element" something that "exist[s] solely by virtue" of the FDCA.  *Id*. at 353.  Any such claim is squarely precluded.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 15 –

**D.      Independent Grounds Also Bar Plaintiff's Strict Liability-Design and Fraud-Based Claims**

**1.      Plaintiff's Strict Liability-Design Defect Claim Is Also Barred By The Restatement (Second) Of Torts Section 402A Comment k**

Plaintiff's strict liability design defect claim is barred by California law.  California has adopted the Restatement (Second) of Torts § 402A Comment k, which precludes liability for manufacturers of prescription medical devices under a design defect theory.  Rather, under traditional tort theories in cases not involving preemption, a medical device manufacturer can only be liable if they are found to have improperly manufactured a device or failed to warn of its known or knowable dangers.  *See Brown v. Superior Court*, 44 Cal. 3d 1049, 1061 (1988) (prescription drugs); *Garrett v. Howmedica Osteonics Corp.*, 214 Cal. App. 4th 173, 178 (2013) (implanted device); *Artiglio v. Superior Court*, 22 Cal. App. 4th 1388, 1397 (1994) (same); *Plenger v. Alza Corp.*, 11 Cal. App. 4th 349, 360-361 (1992) (same); *Hufft v. Horowitz*, 4 Cal. App. 4th 8, 11 & 20 (1992) (same).  This blanket rule does not require a case-by-case analysis of the device's purpose.  In other words, it applies to all such devices.  *Hufft*, 4 Cal. App. at 19.

Medical devices like the Infuse Device fall within Comment k, because by definition, they are "purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health, or presents a potential unreasonable risk of illness or injury." *Riegel*, 552 U.S. at 317 (citing § 360c(a)(1)(C)(ii)) (quotations omitted).   Furthermore, the Infuse Device is a prescription implanted medical device that can only be sold to physicians or hospitals.  (*RJN, Exhibit B, p. 1 (stating "The sale, distribution, and use of this device are restricted to prescription use."))*  Thus, Plaintiff's strict liability design defect claim is barred under California law.

**2.      Plaintiff's Fraud Claims Are Not Pled With The Requisite Particularity**

Plaintiff alleges two causes of action based in fraud—"fraudulent misrepresentation and fraud in the inducement" and "strict liability-misrepresentation"—but neither of them are pled with particularity as required by Federal Rules of Civil Procedure 9(b).  Pursuant to Rule 9(b), "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Rule 9(b) requires a plaintiff to specifically state the circumstances surrounding an

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   alleged fraud.  *See Cafasso*, 637 F.3d at 1055 (stating that "claims of fraud or mistake… must, in

2   addition to pleading with particularity, also plead plausible allegations."); *Erickson*, 846 F. Supp. 2d

3   at 1093 (in addition to finding plaintiff's fraud-based claims preempted, the Court also held that the

4   fraud-based claims were not plead with particularity because "the Complaint does not allege the

5   specific content of these misrepresentations. Nor does the Complaint allege when and where the

6   misrepresentations were made, or who made them."); *see also Caplinger*, 2013 WL 453133, at *11-

7   12 (Infuse Device case; fraud claims dismissed because they were not pled with the particularity

8   required under Rule 9(b)).

9          Moreover, because corporations speak through agents, allegations that a corporation or its

10  "agents" committed fraud or made misrepresentations are generally insufficient, and the specific

11  identity of the agent must be alleged for purposes of Rule 9(b).  *See Mat-Van, Inc. v. Sheldon Good*

12  *& Co. Auctions, LLC*, No. 07-CV-912, 2007 WL 3047093, *4 (S.D. Cal. Oct. 16, 2007) (dismissing

13  plaintiff's fraud claim where plaintiff did not allege that individual making allegedly fraudulent

14  statements was acting as agent for defendant).

15         Nowhere has Plaintiff pled the specific circumstances surrounding any alleged

16  misrepresentations or omissions made by Medtronic.  Therefore, in addition to being barred by

17  preemption, Plaintiff's fraud-based claims must be dismissed because they are not pled with the

18  requisite particularity.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

IV.    CONCLUSION

Innovative medical devices carry risks.  The FDA-imposed requirements manage—but do not eliminate—those risks.  Even with these risks, the preemption defense still applies.  The Infuse Device implanted in Plaintiff had Premarket Approval, yet Plaintiff's causes of action would require Medtronic to use a warning label, design, or manufacturing process different from those required by federal law.  All of Plaintiff's claims against Medtronic accordingly are preempted and must be dismissed.

Dated:  May 28, 2013                          REED SMITH LLP

                                              By____/s/ Michael K. Brown_____
                                                   Michael K. Brown
                                                   Attorneys for Defendants
                                                   Medtronic, Inc. and
                                                   Medtronic Sofamor Danek USA, Inc.